# IN THE UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 12, 2012

Lyle W. Cayce
Clerk

No. 11-20306

In the matter of: LEONIDAS KAPETANAKIS, also known as Lee Kay,

Debtor

-------------------------------------------------------------------------------------------------

LEONIDAS KAPETANAKIS,

Appellant

v.

FIRST NATIONAL INSURANCE COMPANY OF AMERICA,

Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:10-CV-01369

Before JONES, Chief Judge, and WIENER and GRAVES, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Leonidas Kapetanakis ("Kapetanakis") appeals the

bankruptcy court's ruling, as affirmed by the district court, that, pursuant to 11

U.S.C. § 523(a)(2)(A), a claim by Plaintiff-Appellee First National Insurance

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-20306

Company of America ("First National") against Kapetanakis as indemnitor of his corporation's obligations is not dischargeable in bankruptcy. Both the district court and the bankruptcy court held that the $3,050,000.00 debt, which Kapetanakis had incurred as indemnitor, was not dischargeable because he had obtained surety bonds for his corporation from First National through actual fraud. Specifically, Kapetanakis had not only signed for himself but had forged the signatures of his spouse, his brother, and his brother's spouse, as indemnitors under an agreement (the "Indemnity Agreement") that First National had required before issuing the bonds in question to the closely held Kapetanakis corporation, Quality Woodwork Interiors, Inc.

First National initially sued all four indemnitors in district court, seeking to recover the losses it had incurred under those surety bonds. After Kapetanakis testified that he had forged the remaining signatures on the Indemnity Agreement, First National and Kapetanakis entered into a settlement agreement, on the basis of which the district court issued a $3,050,000.00 consent judgment against Kapetanakis. Months later, however, Kapetanakis filed for bankruptcy and sought the discharge of his consent-judgment indebtedness to First National.

Our review of the appellate briefs, oral argument, and the record on appeal convinces us that there was no reversible error of fact or law on the part of the bankruptcy court. Kapetanakis's contention that First National released its non-dischargeable fraud claim when it entered into the consent judgment is foreclosed by the Supreme Court's holding in *Archer v. Warner*.[1] As we are satisfied that First National has established the reliance and intent prongs of § 523(a)(2)(A), Kapetanakis's debt to First National is not dischargeable in bankruptcy.

---

[1] 538 U.S. 314 (2003).

No. 11-20306

First National adduced evidence showing that it would not have issued the bonds without an indemnity agreement signed by the owner or owners of all outstanding stock in the corporation and by the spouse or spouses of the shareholder(s) as well. Kapetanakis's claim that there was no misrepresentation in the Indemnity Agreement because his brother had transferred his shares in the company prior to the issuance of the first bond — making Kapetanakis the only "owner" at that time — misses the point. There is no evidence that First National was informed of that change in stock ownership and no indication in the Indemnity Agreement that the indemnitors, who were purportedly the owners of all issued and outstanding stock in the corporation at the time the agreement was signed, were bound only as long as they *continued* to be shareholders in the company. Neither is there anything in the Indemnity Agreement or other record evidence requiring that it be updated or reviewed by First National contemporaneously with the issuance of each new bond. Indeed, First National presented testimony that the Indemnity Agreement served as part of a continuing "master application" and provided indemnity for all future bonds. Record evidence also suggests that First National required the named stockholders and their spouses to sign the Indemnity Agreement (1) to ensure that each stockholder in this closely held corporation was committed to the success of the business and (2) to circumvent any need to investigate whether the shares were community property. The court's determination that Kapetanakis forged the signatures on the Indemnity Agreement with the intent to deceive First National is supported by the record, given, for example, that the forged signatures were affixed by Kapetanakis contemporaneously with his signature, but in different cursive styles and in different colored ink.

The record as a whole supports the determination that First National actually and justifiably relied on the Indemnity Agreement in issuing the bonds that gave rise to the debt in question, and that Kapetanakis intended to deceive

3

No. 11-20306

First National when he forged the signatures of the other putative indemnitors. And, it is well established that a settlement agreement of a non-dischargeable obligation does not convert the debt to one that is dischargeable.[2]

For the foregoing reasons, the holding that Kapetanakis's consent judgment in favor of First National is non-dischargeable in bankruptcy is AFFIRMED.

---

[2] *Id.* at 321.